Michael Jungreis, ABA No. 7711184
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501-1990
(907) 222-7100 (phone)
(907) 222-7199 (fax)
mj@reevesamodio.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SPECIALIZED TRANSPORT & RIGGING, LLC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and AMERICAN INTERNATIONAL GROUP, INC., <br><br> Defendants. | No. 3:20-cv- <br><br> **COMPLAINT FOR DAMAGES** |

Plaintiff Specialized Transport & Rigging, LLC. ("Specialized") complains and alleges as follows:

## PARTIES

1. Plaintiff Specialized is an Alaska limited liability company with its principal place of business in Alaska, and its owners and members are citizens of Alaska and Washington. Specialized is properly licensed under the laws of the Alaska, is in good standing, and is fully competent and qualified to maintain this action.

2. Defendant National Union Fire Insurance Company of Pittsburgh, Pa ("National Union") is a Pennsylvania insurance company with its principal place of business in

New York. National Union is registered to do insurance business in Alaska and is therefore subject to the general personal jurisdiction of this Court.

3. Defendant American International Group, Inc. ("AIG") is the parent corporation of Defendant National Union. AIG is a Delaware corporation with its principal place of business in New York.

## JURISDICTION / VENUE

4. Subject matter jurisdiction is proper under 28 U.S.C. § 1332 because Specialized's damages exceed $75,000 and because there is diversity between the parties as set forth in paragraphs 1, 2, and 3 above.

5. Personal jurisdiction exists with respect to both Defendants pursuant to the following subsections of AS 09.05.015: (a)(1)(D), (a)(4)((A), and (a)(10).

6. Venue is proper in this District under 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

7. Specialized provides logistics and transportation services within the State of Alaska for unusually heavy and complex loads. It is the carrier to which customers turn for the toughest assignments of transporting the heaviest, bulkiest, most awkward items. In order to provide these services, Specialized depends on extremely heavy duty and highly specialized equipment. Its equipment in many cases must be specially ordered and manufactured, a process that is not only expensive but also very time consuming.

8. In 2014, Specialized ordered from Aspen Custom Trailers, a Canadian firm, a specialized, extremely heavy duty trailer assembly, including a 100 Ton 5 Axle Fixed Gooseneck Trailer, a 55 Ton Tri Axle Jeep ("the Jeep"), a 30 Ton Tri Axle Dolly ("the Dolly"), a 50 Ton

REEVES AMODIO LLC
1007 WEST 3RD AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-1990
PHONE (907) 222-7100, FAX (907) 222-7199

Railbeam Deck, a 50 Ton Low Profile Bunk, and a 100 Ton Flush Deck Component Plate. This assembly is collectively informally known as the "Bomb Cart." A schematic drawing of the Bomb Cart, along with a tractor used to pull it, is attached as Exhibit A and incorporated by reference. The cost of the Bomb Cart was $630,715 Canadian, or approximately $564,931 U.S. The invoice listing these items is attached as Exhibit B and incorporated by reference.

9. For reference purposes, each of the component items of the Bomb Cart were assigned by Aspen Custom Trailers a separate identification number. However, the numbers were emplaced by the manufacturer only for reference and have no independent legal significance. In particular, the components were not separately registered with the Alaska Division of Motor Vehicles or any other registering or licensing authority.

10. The Jeep and the Dolly are detachable elements of the Bomb Cart and can be utilized separately. However, the remaining components of the Bomb Cart assembly constitute a single functional trailer unit, have no independent utility, and must be used together in order to carry out the function for which the assembly was designed. Because those remaining components were designed all together as a custom unit by Aspen, they have no value apart from the complete assembly.

11. With the very substantial cost of the Bomb Cart, it was necessary to keep it working in order to recover its costs and contribute to the profits of Specialized. Specialized has at all relevant times enough business to keep the Bomb Cart busy.

12. The Bomb Cart was defectively designed. When utilized by Specialized for the purpose it was designed for, the Bomb Cart broke, on more than one occasion.

13. Casualty insurance coverage for the Bomb Cart was obtained by Specialized through policy CA 425-72-25 ("the Policy") issued by Defendant National Union. National Union is a wholly owned subsidiary of Defendant AIG, and AIG provides adjustment services for National Union. A copy of the Policy is attached as Exhibit C and incorporated by reference.

14. On March 30, 2019, the Bomb Cart broke while transporting items at a low rate of speed on the Elliot Highway, northbound for the Prudhoe Bay oil field.

15. The breakdown was immediately reported to AIG and National Union. AIG assigned its employee Elle Seidule as adjustor. AIG and National Union accepted coverage. There has never been a dispute as to whether the damage to the Bomb Cart was covered by the Policy.

16. A repair quote was submitted to AIG on May 18, 2019. On July 7 of that year AIG issued a check for $36,362 as a preliminary payment for repairs. On August 12, 2019, AIG issued a check for $26,005.80 for the towing charge to a repair yard.

17. On August 16, 2019, more than four and a half months after the damage occurred, AIG retained an engineer to inspect the Bomb Cart and determine the extent of the damage. During this period the Bomb Cart was out of service and Specialized sustained lost profits as a result.

18. The engineer took several months to make a determination. He was in California and did not make a physical inspection of the Bomb Cart. AIG finally declared the Bomb Cart a total loss. During this period the Bomb Cart was out of service, and no replacement funds were received so Specialized continued to sustain lost profits.

19. In late October, 2019, AIG obtained an appraisal report from "Vehicle Valuation Services." This appraiser did not make a visual inspection of the Bomb Cart, nor did it

COMPLAINT FOR DAMAGES
SPECIALIZED TRANSPORT & RIGGING v. NATIONAL UNION
et al

Case 3:20-cv-00188-TMB   Document 14   Filed 08/04/20   Page 4 of 8

REEVES AMODIO LLC
1007 WEST 3RD AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-1990
PHONE (907) 222-7100, FAX (907) 222-7199

show any familiarity with the Alaska market for such equipment. The appraisal stated that it was based entirely on the original purchase price with a standard depreciation schedule. The appraisal report does not show an address for the appraiser nor any indication of which person or persons conducted the appraisal. The World Wide Web site of this appraiser shows it is located in the Chicago area. That site also shows that the appraiser advertises that it is "Used by all the Top Insurance Carriers." The appraised amount was $189,228.

20. The Vehicle Valuation Services appraisal was inadequate and worthless. One key reason is that it separated out the trailer component and gave a value only for that component, despite the fact that the railbeam deck, the flush deck, and the bunk were integral parts of the unit which had no value without the trailer. It was analogous to appraising an automobile that had been determined to be a total loss, but subtracting the value of the engine if the damage was to the rear end of the vehicle.

21. AIG in late October of 2019, six and a half months after the damage occurred, offered a settlement for the value of the damaged property as the $189,228 minus the $5,000 deductible and the amount already paid for proposed repairs. When challenged as to why the railbeam deck, flush deck and bunk were excluded, the response from the AIG adjustor was that those items had separate "VIN numbers." However, this was false – VIN, or Vehicle Identification Numbers, are assigned and specified under federal law set forth in 49 CFR Part 565. None of the Bomb Cart components for which compensation was requested (that is, the components apart from the Dolly and the Jeep) had VIN numbers; the serial number placed by the manufacturer had no legal significance and were for reference only.

COMPLAINT FOR DAMAGES
SPECIALIZED TRANSPORT & RIGGING v. NATIONAL UNION
et al

REEVES AMODIO LLC
1007 WEST 3RD AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-1990
PHONE (907) 222-7100, FAX (907) 222-7199

22. Specialized in November of 2019 presented a counteroffer based on an appraisal that had been conducted shortly before the date of loss in connection with a refinancing. The appraisal had been conducted on the basis of an actual physical inspection of the equipment by an experienced local Alaska based appraiser, Alaska Equipment Appraisers.

23. AIG requested additional backup for the appraisal denied the counteroffer. According to correspondence, at least part of the reason for the denial was that it included the value of the railbeam deck, flush deck, and bunk.

24. Exclusion of these three items from the valuation of the claim, particularly when based on the theory that these items had separate "VIN" numbers, is below the standard of care for adjustors and constitutes negligent adjustment.

25. Specialized, attempting to comply with the valuation provisions of the Policy, provided AIG with a new appraisal of the damaged unit showing the amount of loss as $321,750. Under the policy, AIG was then required to have its appraiser and Specialized's appraiser choose a third appraiser whose findings would be binding. However, rather follow the procedure of its own Policy, AIG instead demanded additional backup and documentation from Alaska Equipment Appraisers, something which it did not provide with respect to its own, defective appraisal.

26. At the time of filing of this complaint, it is late April, 2020. AIG and National Union have not to date provided a full settlement of the damage sustained by its insured Specialized in the loss that occurred on March 30, 2019. The one offer that has been made to settle was made nearly seven months after the loss, and no reasonable or justifiable offer has been made to date by the defendants to satisfy their liability under the Policy and as adjustor.

COMPLAINT FOR DAMAGES
SPECIALIZED TRANSPORT & RIGGING v. NATIONAL UNION
et al

Case 3:20-cv-00188-TMB   Document 16   Filed 08/04/20   Page 6 of 8

27. As a proximate result of the negligent adjustment and delays Specialized has suffered lost profits from the loss of use of the Bomb Cart or a replacement in excess of one million dollars.

28. The foregoing conduct by AIG and National Union are in violation of contractual obligations, statutory obligations, and common law obligations to expeditiously and fairly compensate their insured Specialized under the Policy.

**FIRST CLAIM FOR RELIEF**
**(Casualty Loss)**

29. Plaintiffs reallege and incorporate herein the allegations contained in the preceding paragraphs of the complaint.

30. In accordance with the Policy and Specialized's casualty loss, National Union owes Specialized $321,750 minus the deductible of $5,000 and the amount paid for repairs as compensation for the insured loss of the Bomb Cart, together with interest from March 30, 2019.

**SECOND CLAIM FOR RELIEF**
**(Lost Profits from Loss of Use)**

31. Plaintiffs reallege and incorporate herein the allegations contained in the preceding paragraphs of the complaint.

32. The actions of the Defendants as alleged resulted in a delay in compensation to Specialized in violation of AS 21.36.020, AS 21.36.125 and common law duties of insurers and adjustors, which delay proximately caused lost profits of one million dollars or more, the exact

COMPLAINT FOR DAMAGES
SPECIALIZED TRANSPORT & RIGGING v. NATIONAL UNION
et al

amount to be proven at trial or through motion, as a result of loss of replacement for the Bomb Cart, for which loss both defendants are liable.

## PRAYER FOR RELIEF

Having alleged the foregoing, Plaintiff Specialized Transport & Rigging, LLC prays for relief as follows:

A.  For judgment in accordance with the first claim for relief against Defendants National Union Fire Insurance Company of Pittsburgh, Pa. and American International Group, Inc. jointly and severally in the amount of $316,750 plus interest.

B.  For judgment in accordance with the second claim for relief against Defendants National Union Fire Insurance Company of Pittsburgh, Pa. and American International Group, Inc. jointly and severally in an amount in excess of one million dollars to be proven.

C.  For fees and costs in bringing this suit to the full extent permitted by law;

D.  For such other relief as the Court deems just and equitable.

DATED this 31 day of July, 2020.

REEVES AMODIO, LLC

By: Michael Jungreis, ABA No. 7711184
Attorneys for Plaintiff

COMPLAINT FOR DAMAGES
SPECIALIZED TRANSPORT & RIGGING v. NATIONAL UNION
et al